| | | |
|---|---|---|
| Danielle R. Dunne and James M. Dunne, | ) | |
| | ) | No. 12 C 872 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Anthony Reda, in his individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## Introduction

Anthony Reda, a Village of Addison police officer assigned to Addison Trail High School, called paramedics on December 15, 2010 after Danielle Dunne (hereinafter "Dunne"), a 17-year old student, indicated that she smoked marijuana, drank tequila, and tried to overdose on pills. Dunne was transported to a nearby hospital and evaluated by a psychologist. Less than two months later, on February 7, 2011, Officer Reda called paramedics again after Dunne, who was apparently frustrated with Officer Reda's response to a complaint she had made, said to him, "No one f***ing cares about me; if I put a gun to my head, it wouldn't even matter." Dunne was transported to a nearby hospital for evaluation against her will and released a few hours later. Dunne and her father, James Dunne, responded by filing this lawsuit against Officer Reda under 42 U.S.C. § 1983, alleging that he seized Dunne without probable cause in violation of the Fourth Amendment. They seek to

recover $4,766 in medical bills for the second hospital visit and other damages. Presently before the Court is Officer Reda's Motion for Summary Judgment (R. 25). For the reasons explained below, Officer Reda's motion is granted.

## I.

Summary judgment is appropriate "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 811 (7th Cir. 2011). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The following background is a summary of the material facts, viewed in the light most favorable to Dunne.

## II.

Officer Reda has been employed by the Addison Police Department since 1998. (Def. Stmt. ¶ 6; Pl. Resp. ¶ 6.) In May 2010, he was assigned to Addison Trail High School as a Resource Officer. (*Id.*) In the fall of 2010, Dunne was a student at Addison Trail High School. (Def. Stmt. ¶ 8; Pl. Resp. ¶ 8.)

That fall, Dunne talked to Officer Reda at least seven times about an ex-boyfriend, Joseph Hower, who was harassing her. (Def. Stmt. ¶ 9; Pl. Resp. ¶ 9.) The first time Dunne met with Officer Reda, she also informed him that Hower

sexually assaulted her in the winter of 2009-10. (Pl. Add. Stmt. ¶¶ 1, 4.) When Officer Reda investigated Dunne's harassment complaints, Hower claimed that Dunne was the one initiating the contact. (Def. Stmt. ¶ 9; Pl. Resp. ¶ 9; Pl. Add. Stmt. ¶ 5.) Officer Reda told Hower to stop contacting Dunne. (*Id.*)

On December 15, 2010, Officer Reda observed that Dunne appeared to be intoxicated while at school. (Def. Stmt. ¶ 11; Pl. Resp. ¶ 11.) Officer Reda escorted Dunne to the dean's office, where he took her cell phone and saw a text message she was composing, which read, "I tried to OD on pills." (*Id.*) Dunne then told Officer Reda that she smoked marijuana and drank tequila at a friend's house and took some pills. (*Id.*) Officer Reda contacted the Addison Fire Department. (*Id.*) The paramedics arrived, spoke to Dunne, and then transported her to a nearby hospital where she was seen by a psychiatrist and discharged. (*Id.*)

At some point in December 2010, apparently at least in part as a result of this incident, Dunne was suspended from Addison Trail High School and began attending classes at a different facility. (Def. Stmt. ¶¶ 2, 8; Pl. Resp. ¶¶ 2, 8.)

On February 7, 2011, Dunne met with Officer Reda at the Addison Police Department to report that Hower was still contacting her. (Def. Stmt. ¶ 2; Pl. Resp. ¶ 2; Pl. Add. Stmt. ¶ 6.) Officer Reda telephoned Hower, who again claimed that his contacts with Dunne were in response to her contacting him. (*Id.*) Officer Reda told Dunne that Hower denied everything and said that Dunne was texting him. (Pl. Add. Stmt. ¶ 7.) Dunne offered to show Officer Reda text messages on her phone, but Reda said, "[N]o, that won't be necessary." (*Id.*)

At that point, although she cannot remember her exact words, Dunne testified that she said something in line with, "No one f***ing cares about me; if I put a gun to my head, it wouldn't even matter." (*Id.*; R. 27-2, Dunne Dep. at 34:9-18.)[1] Officer Reda responded that Dunne should not have said that because it made her a suicide threat and he would have to call her mother and the paramedics. (Pl. Add. Stmt. ¶ 7.) Dunne replied that "I was talking out of my butt, [you] know[] me," and made a comment, "[W]here am I even going to find a gun?" (*Id.* ¶ 8.)

Officer Reda then told Dunne that she was not free to leave and that he was calling her mother and the Addison Fire Department to take her to the hospital to be evaluated. (*Id.* ¶¶ 10-15.) Over Dunne's objections, the paramedics took her to a nearby hospital. (Def. Stmt. ¶ 16; Pl. Resp. ¶ 16.) At the hospital, Dunne was assessed by medical personnel and released a few hours later. (*Id.*) As a result of this second hospital trip, Dunne was billed $3,917.00 by Alexian Brothers Medical Center and another $849.40 by the Addison Fire Department.

## III.

### A.

A seizure made to effectuate an involuntary hospitalization is analyzed under the Fourth Amendment's "probable cause" standard. *Fitzgerald v. Santoro*, No. 12-1487, 2013 WL 452446, at *5 (7th Cir. Feb. 7, 2013). Probable cause exists "only if there are reasonable grounds for believing that the person seized is subject to

---

[1] Officer Reda's recollection is substantially similar; he testified that Dunne stated, "No one cares if I go get a gun and put it to my head and kill myself." (R. 27-2, Officer Reda Dep. at 47:16-20.)

seizure under the governing legal standard." *Id.* (quoting *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992)). 405 ILCS 5/3-504(b) provides that:

> A peace officer may take a minor into custody and transport the minor to a mental health facility when, as a result of his personal observation, the peace officer has reasonable grounds to believe that the minor is eligible for admission under Section 3-503 and is in a condition that immediate hospitalization is necessary in order to protect the minor or others from physical harm.

A minor is eligible for admission under Section 3-503 if the facility director finds that the minor "has a mental illness or emotional disturbance of such severity that hospitalization is necessary and that the minor is likely to benefit from inpatient treatment." 405 ILCS 5/3-503(a). *Accord Threlkeld v. White Castle Sys., Inc.*, 201 F. Supp. 2d 834, 842 (N.D. Ill. 2002) ("Probable cause to hospitalize a person against that person's will exists where the facts and circumstances . . . are sufficient in themselves to warrant an individual of reasonable caution in the belief that an immediate danger exists of the person hurting herself or others.").

The probable cause inquiry focuses on the facts and circumstances known to the police officer at the time of the seizure. *See, e.g., Chathas v. Smith*, 884 F.2d 980, 987 (7th Cir. 1989). "If there is probable cause [at the time of the seizure], it is irrelevant if the [individual] turns out to be noncommittable." *Id.*

Moreover, where the material facts are undisputed, a court may determine whether probable cause exists as a matter of law. *Id.*; *see also Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997).

Here, although Dunne and Officer Reda have slightly different recollections of the events of and leading up to February 7, 2011, the Court has viewed the evidence in the light most favorable to Dunne (as it must on summary judgment) and concludes that Officer Reda had probable cause to call the paramedics and send Dunne to the hospital for evaluation. The facts and circumstances known to Officer Reda at the time were sufficient for him to reasonably believe that immediate action was required in order to protect Dunne from harm.

There is no dispute that when Officer Reda called the paramedics on February 7, 2011, he knew that: (1) Dunne had been sexually assaulted by her ex-boyfriend the winter before, or at least that Dunne made that claim; (2) less than two months before, Dunne showed up to school under the influence of marijuana, alcohol, and pills and texted a friend that she "tried to OD on pills";[2] (3) Dunne was recently suspended from school; and (4) Dunne had just made a statement to the effect of, "No one f***ing cares about me; if I put a gun to my head, it wouldn't even matter." These undisputed facts provided reasonable grounds for Officer Reda to believe that Dunne presented an immediate danger to herself and that seeking an evaluation from a trained medical professional was warranted.

Moreover, the seizure in this case was relatively short. Dunne was required to wait a few minutes for paramedics to arrive and transport her to the hospital and then was discharged from the hospital after a few hours. As the Seventh Circuit

---

[2] Dunne apparently disputes that she was actually trying to overdose on pills, but the material issue here is what Officer Reda knew, not what Dunne subjectively intended. There is no dispute that Officer Reda saw Dunne's text message.

explained in *Villanova*, 972 F.2d at 796, courts assessing the reasonableness of a commitment should balance the cost of confinement against the harm the individual might do if released and the probability of the harm occurring. "The shorter the detention, the less compelling is the evidence of the necessity for it that the authorities need to produce." *Id.* Here, the potential harm was significant (suicide) and the probability of it occurring was not insubstantial given that Officer Reda knew that Dunne had apparently already tried to overdose on pills.

Dunne argues that Officer Reda lacked probable cause because she qualified her statement about putting a gun to her head with an "if" and then explained to Officer Reda that "I was talking out of my butt, [you] know[] me." But Officer Reda did know Dunne, including her apparent overdose attempt less than two months before. Based on the totality of the circumstances known to Officer Reda, he was not required to disregard Dunne's statement simply because she claimed she was joking. Most people facing involuntary hospitalization deny that they need medical attention; if a simple denial were enough, probable cause would never exist. Officer Reda is not a mental health professional qualified to make an ultimate determination about the seriousness of Dunne's threat. He decided that Dunne should be evaluated by a professional and had probable cause to do so.

Dunne also suggests that Officer Reda sent her to the hospital as retribution for criticizing his response to her harassment complaints. But "[t]he probable cause inquiry is an *objective* one." *Fitzgerald*, 2013 WL 452446, at *5 (quoting *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010)) (emphasis in original). Thus,

in *Fitzgerald*, the Seventh Circuit rejected as irrelevant an argument that a police officer acted out of animus instead of a genuine concern for the plaintiff. *Id.* The same result is warranted here. Regardless of Officer Reda's motivations, he had objectively reasonable grounds for believing that Dunne needed a mental health evaluation.

## B.

Officer Reda also argues that even if he lacked probable cause, he is still entitled to qualified immunity. The Court agrees.

As the Seventh Circuit explained in *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998), the qualified immunity inquiry focuses on

> whether a reasonable officer could have mistakenly believed that probable cause existed. Courts have referred to [this] inquiry as asking whether the officer had arguable probable cause. Arguable probable cause exists when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. Officers are entitled to summary judgment on qualified immunity grounds if their actions were not objectively unreasonable at the time they were taken. The court should ask if the officer acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years later.

(Citations omitted.) *See also Sherman v. Four Cnty. Counseling Ctr.*, 987 F.2d 397, 402 (7th Cir. 1993) (explaining that qualified immunity "accommodate[s] reasonable errors 'because officials should not err always on the side of caution because they fear being sued'") (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

As explained above, Officer Reda had probable cause to call the paramedics and send Dunne to the hospital for evaluation. For the same reasons, Officer Reda also had "arguable" probable cause and is entitled to qualified immunity. "Police officers should not be forced by fear of suit to wait for a mentally unstable person to carry out threats before intervening." *Sherman*, 987 F.2d at 402.

**C.**

James Dunne asserts a derivative claim under the Illinois Family Expense Act, 750 ILCS 65/15, because he was legally responsible for his daughter's medical bills. (R. 1.) There is no dispute that if Officer Reda is entitled to summary judgment on Danielle Dunne's claim, he is also entitled to summary judgment on James Dunne's derivative claim for medical expenses.

**IV.**

With no genuine issues of material fact, Officer Reda is entitled to judgment as a matter of law. His summary judgment motion is granted in its entirety. This action is dismissed with prejudice.

ENTERED:

Thomas M. Durkin
_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  February 19, 2013